**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 23, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JARED L. DILLON,

        Plaintiff - Appellant,

    v.

MOUNTAIN COAL COMPANY,
L.L.C.; ARCH WESTERN
RESOURCES, L.L.C., a Delaware
Corporation; ARCH COAL, INC., a
Delaware Corporation,

        Defendants - Appellees.

No. 08-1004

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D. Ct. No. 1:01-CV-02199-MSK-MEH)**

---

Damon J. Davis (J. Keith Killian, with him on the briefs), Killian, Jensen &
Davis, P.C., Grand Junction, Colorado, appearing for Appellant.

Jeffrey T. Johnson (Christina Gomez and Alyssa Yatsko with him on the brief),
Holland & Hart LLP, Denver, Colorado, appearing for Appellees.

---

Before **TACHA**, **SEYMOUR**, and **HOLMES**, Circuit Judges.

---

**TACHA**, Circuit Judge.

      Jared Dillon, a former employee of Mountain Coal Company, L.L.C., won a

jury verdict against Mountain Coal and its parent companies (collectively, "Mountain Coal") on his claims of discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq. Thereafter, the district court granted Mountain Coal's motion for judgment as a matter of law, concluding that Mr. Dillon had not put forth sufficient evidence to show that Mountain Coal regarded him as disabled. Mr. Dillon appeals. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

## I. BACKGROUND

In March 1999, Mountain Coal hired Mr. Dillon as an underground maintenance mechanic, or "lube man," at West Elk Mine. Mr. Dillon testified that his responsibilities included "keep[ing] the essential fluids, hydraulic, gear oil . . . [and] so forth, at an operable level on the machinery; greasing, washing, and maybe replacing a few minor bits here and there." The official job requirements included being able to lift fifty to sixty pounds and being able to swing a sledgehammer.

On April 19, 1999, Mr. Dillon injured his neck and back when the cover on a mining machine fell and struck him. He returned to work on his next scheduled workday, April 23, but told his supervisor, Bob Turner, that he was in a lot of pain. Mr. Turner assigned Mr. Dillon to less physically demanding tasks, such as refueling and servicing trucks. Mr. Dillon saw a doctor on April 30 and again on May 5, and the doctor restricted Mr. Dillon's work activities to lifting no more

than fifteen pounds.  The doctor also referred Mr. Dillon to a second doctor, who restricted Mr. Dillon from doing any work for one week, and then released him to work without restrictions.

The second day after he had returned to work, on June 2, Mr. Dillon told supervisor Steve O'Connell that he was in a lot of pain and that his inability to work at his usual speed might endanger himself and others.  Mr. O'Connell told Mr. Dillon to go home, and he did.  After that day, Mr. Dillon did not return to work at West Elk Mine.  That fall, Dr. Robert Fox determined that Mr. Dillon was able to move well and that he had reached "maximum medical improvement."  On January 12, 2000, Dr. Fox gave Mr. Dillon permanent lifting restrictions of no more than fifty pounds maximum and twenty-five pounds occasionally.

Mr. Dillon testified that he twice called Human Resources Manager Edgar Langrand to ask when he could return to work.  Mr. Langrand responded that Mr. Dillon could return to work only if and when he had no restrictions.  On January 24, Mr. Langrand sent Mr. Dillon a letter, informing him that according to Dr. Fox's reports and recommended lifting restrictions, Mr. Dillon was unable to work.  The letter also stated that Mr. Dillon's short-term disability period had expired and that because he was unable to return to work, he was being fired.

Eventually, Mr. Dillon and three co-plaintiffs filed suit against Mountain Coal, asserting state-law claims as well as discrimination under the ADA.  After Mountain Coal filed a pre-trial motion for summary judgment, the district court

dismissed two plaintiffs and limited Mr. Dillon and co-plaintiff Michael Clawson to their claims under the ADA. At the close of the plaintiffs' case, Mountain Coal orally moved for judgment as a matter of law under Fed. R. Civ. P. 50(a), based primarily on its argument that the plaintiffs failed to prove that Mountain Coal regarded them as disabled. *See* 42 U.S.C. § 12102(1)(C). The court reserved ruling on the motion, and at the close of all evidence Mountain Coal renewed the motion without further argument. The district court reserved ruling on the motion until after the jury had rendered a verdict. The jury found for both plaintiffs. Mountain Coal then renewed its motion for judgment as a matter of law under Rule 50[1] and filed a detailed brief in support of the motion. The district court granted the motion as to Mr. Dillon, but denied the motion as to Mr. Clawson. *Clawson v. Mountain Coal Co.*, No. 01-CV-02199-MSK-MEH, 2007 WL 201253, at *10 (D. Colo. Jan. 24, 2007).[2]

Mr. Dillon appeals, asserting three points of error. Of primary importance, he contends that the district court erred in holding that there was insufficient evidence for a reasonable jury to find that Mountain Coal regarded Mr. Dillon as disabled. He further argues that Mountain Coal's motion for judgment as a matter of law was legally insufficient because it did not identify the specific evidence

---

[1]Mountain Coal characterizes the new motion as a renewed motion under Rule 50(a). Mr. Dillon characterizes it as a Rule 50(b) motion. We agree with Mr. Dillon's conception, but his characterization does not affect our analysis.

[2]Mr. Clawson and Mountain Coal subsequently settled.

that he had failed to present.  Finally, Mr. Dillon asserts that the district court abused its discretion in excluding certain testimony.

## II.  DISCUSSION

A.    "Regarded-As" Claims Under the ADA

The ADA prohibits employment discrimination against individuals with disabilities.  42 U.S.C. § 12112(a).[3]  As defined by the ADA, a disability is "(A) a physical or mental impairment that substantially limits one or more major life activities . . .; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ."  *Id.* § 12102(1)(A)–(C).  Where, as in this case, the plaintiff contends that his employer regarded him as disabled, he must show that he has an impairment that "does not substantially limit major life activities but is treated by a covered entity[4] as constituting such limitation."  29 C.F.R. § 1630.2(l)(1).[5]  *See also Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1190

---

[3]The current version of the ADA prohibits discrimination against "a qualified individual on the basis of disability . . . ."  42 U.S.C. § 12112(a).  The version of the ADA that was law when this suit was filed prohibited discrimination "against a qualified individual with a disability because of the disability of such individual . . . ."  42 U.S.C. § 12112(a) (2002).  The change in the statute's wording does not affect our analysis in this case.

[4]It is undisputed that Mountain Coal is a covered entity for purposes of the ADA.  *See* 42 U.S.C. § 12111(2) ("The term 'covered entity' means an employer . . . .").

[5]Equal Employment Opportunity Commission ("EEOC") regulations explain that "although an individual may have an impairment that does not in fact substantially limit a major life activity, the reaction of others may prove just as
(continued...)

(10th Cir. 2007) (in a regarded-as suit, "a plaintiff must show that an employer has mistaken beliefs about the plaintiff's abilities: the employer 'must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.'") (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)).

Working is a "major life activity." 29 C.F.R. § 1630.2(i); *EEOC v. Heartway Corp.*, 466 F.3d 1156, 1162 (10th Cir. 2006). To prevail on a claim that his employer regarded him as substantially limited in the major life activity of working, a plaintiff must demonstrate that his employer regarded him as significantly restricted in performing either (1) a class of jobs; or (2) a broad range of jobs in various classes. *See Heartway*, 466 F.3d at 1163 (holding that "there must be sufficient evidence that the employer *subjectively* believed the employee to be significantly restricted as to a class of jobs or broad range of jobs in various classes."). The EEOC's regulations define a "class of jobs" as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also

---

[5](...continued)
disabling. 'Such an impairment might not diminish a person's physical or mental capabilities, but could nevertheless substantially limit that person's ability to work as a result of the negative reactions of others to the impairment.'" 29 C.F.R. pt. 1630 app. (quoting *School Bd. v. Arline*, 480 U.S. 273, 283 (1987)).

disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii)(B). A

"broad range of jobs" is defined as "[t]he job from which the individual has been

disqualified because of an impairment, and the number and types of other jobs not

utilizing similar training, knowledge, skills or abilities, within that geographical

area, from which the individual is also disqualified because of the impairment."

*Id.* § 1630.2(j)(3)(ii)(C).

We therefore evaluate a "regarded as" claim under the ADA using a

two-step inquiry. First, we must determine whether the employer regarded the

employee as significantly restricted in performing his specific job because of an

impairment. *See Heartway*, 466 F.3d at 1165. Next, we determine whether the

employer subjectively believed that the employee was significantly restricted in

performing either a class of jobs or a broad range of jobs in various classes. *Id.* at

1163. Because this type of claim rests heavily on the employer's subjective state

of mind, we have explained that it is difficult to prove:

> Proving that an employee is regarded as disabled in the major life
> activity of working takes a plaintiff to the farthest reaches of the ADA.
> It is a question embedded almost entirely in the employer's subjective
> state of mind. Thus, proving the case becomes extraordinarily difficult.
> Not only must a plaintiff demonstrate that an employer thought he was
> disabled, he must also show that the employer thought that his disability
> would prevent him from performing a broad class of jobs. As it is safe
> to assume employers do not regularly consider the panoply of other jobs
> their employees could perform, and certainly do not often create direct
> evidence of such considerations, the plaintiff's task becomes even more
> difficult.

*Id.* at 1162 (quoting *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir.

2001)).

B.  Sufficiency of the Evidence

We review de novo the district court's grant of judgment as a matter of law to Mountain Coal. *See Johnsen v. Indep. Sch. Dist. No. 3*, 891 F.2d 1485, 1489 (10th Cir. 1989).  Judgment as a matter of law is appropriate when a "party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  The decisive question is whether "the plaintiff has arguably proven a legally sufficient claim."  *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1241 (10th Cir. 2001).

In evaluating Mr. Dillon's "regarded as" claim under the ADA, we must first determine whether Mountain Coal regarded Mr. Dillon as substantially limited in performing his specific job due to an impairment.  *See Heartway*, 466 F.3d at 1165.  We agree with the district court that Mr. Dillon offered sufficient evidence that, due to his injuries and resultant work restrictions, Mountain Coal regarded him as substantially limited in performing that job.  *See Clawson*, 2007 WL 201253, at *7.  During the relevant time frame, Mountain Coal had enacted a so-called "no restrictions" or "100% healed" policy.  Under that policy, Mountain Coal would not permit any employee with medical restrictions from working in any capacity at the mine.  Although Mountain Coal put forth some evidence that it did not categorically apply the policy (and therefore did not terminate Mr. Dillon

-8-

solely because of his restrictions), we are required to view the evidence in the light most favorable to the verdict. The jury was entitled to believe that Mountain Coal enforced its policy as to Mr. Dillon. Mr. Dillon also produced the letter in which Mountain Coal announced that it was terminating him. That letter specifically referenced Mr. Dillon's work restrictions as a reason for firing him.

Still, Mr. Dillon must also show that Mountain Coal regarded him as substantially limited in his ability to perform either a class of jobs or a broad range of jobs in various classes, in the geographic area surrounding West Elk Mine. On this point, Mr. Dillon again emphasizes Mountain Coal's "no restrictions" policy. That policy, Mr. Dillon argues, shows that Mountain Coal regards Mr. Dillon as substantially limited in performing mining jobs.

The policy, however, only speaks to whether Mountain Coal regarded Mr. Dillon as substantially limited in his ability to work at West Elk Mine. The policy does not reveal "the number and types of jobs utilizing similar training, knowledge, skill or abilities" in the geographic area, as the EEOC regulations require. 29 C.F.R. §1630.2(j)(3)(ii)(B). Mr. Dillon did not put on other evidence describing the jobs available in the area that fell into the class of "mining jobs," nor did he produce evidence demonstrating that mining jobs are, in fact, a class of jobs. He therefore produced no evidence from which a reasonable jury could conclude that Mountain Coal regarded him as substantially limited in the ability to perform a class of jobs.

Mountain Coal's no-restrictions policy also does not, by itself, support a finding that Mountain Coal regarded Mr. Dillon as unable to perform a broad range of jobs in various classes in the geographic area. *See id.* § 1630.2(j)(3)(ii)(C). Again, the policy only speaks to the jobs at West Elk Mine, and Mr. Dillon did not produce evidence describing the jobs available in the area. We have stated that a single place of employment could include a "broad range of jobs in various classes." *See Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1088 (10th Cir. 2008) (holding that because the employer believed the plaintiff "could only do one or two jobs among the variety of jobs in the plant," the jury could find that the employer believed he was "unable to perform a broad range of jobs in various classes.") (quotations omitted). However, Mr. Dillon did not produce evidence showing that, within West Elk Mine, there is a broad range of jobs in various classes that do *not* utilize "similar training, knowledge, skills or abilities" as the jobs Mr. Dillon performed at the mine. *See* 29 C.F.R. § 1630.2(j)(3)(ii)(C). His evidence shows only that West Elk Mine had a variety of mining jobs. He did not show that those jobs fell into different classes, or that the jobs would require different skills and training from Mr. Dillon's job at the mine.

Thus, while a jury could infer that Mountain Coal considered Mr. Dillon as substantially limited in his ability to work at West Elk Mine, there was no evidence that Mountain Coal regarded him as substantially limited in his ability to work outside of West Elk Mine, or that the jobs within the mine could properly be

characterized as a "class of jobs" or a "broad range of jobs."

Mr. Dillon cites *McKenzie v. Dovala*, 242 F.3d 967 (10th Cir. 2001), to support his argument that an employer's belief that an employee cannot perform any job in the company is sufficient to meet the employee's evidentiary burden. We disagree that *McKenzie* stands for that proposition. The issue in *McKenzie* was whether there was evidence that the plaintiff's former employer—the county sheriff's office—regarded her as limited in her ability to perform only her prior job, or whether her employer regarded her as limited in performing a class of jobs that we characterized as "law enforcement jobs." *Id.* at 970–71. We did not hold, as Mr. Dillon suggests, that an employer's refusal to rehire the plaintiff constitutes evidence that the jobs at the company necessarily qualify as a "class of jobs" or "broad range of jobs."

Mr. Dillon also points to evidence that Mountain Coal's safety representative told his co-plaintiff, Mr. Clawson, that he "probably would not be returning to the mining industry." *Clawson*, 2007 WL 201253, at *4. Because Mr. Clawson also had work restrictions, Mr. Dillon argues that the statement shows that Mountain Coal regarded Mr. Dillon as similarly limited. We do not agree. The statement was directed toward Mr. Clawson alone. Mr. Clawson and Mr. Dillon suffered from different injuries and were under different work restrictions. Mr. Dillon's restrictions involved heavy lifting, while Mr. Clawson's involved driving. A jury could not reasonably infer from this comment that

-11-

Mountain Coal believed Mr. Dillon was similarly limited in his ability to perform mining jobs.[6]

Mr. Dillon argues that he and Mr. Clawson later found positions at two nearby mines, and that their employment was evidence that jobs similar to those at West Elk Mine were available in the geographic area. However, without additional evidence regarding the two men's specific jobs at those mines, a jury could not conclude that those jobs "utiliz[ed] similar training, knowledge, skills or abilities" as the job Mr. Dillon performed at West Elk Mine. 29 C.F.R. § 1630.2(j)(3)(ii)(B).

Citing authority from the Sixth Circuit, Mr. Dillon argues that Mountain Coal's reasons for firing him were pretextual, which is evidence that Mountain Coal regarded him as disabled. *See Ross v. Campbell Soup Co.*, 237 F.3d 701, 708 (10th Cir. 2001). Mountain Coal, however, has not claimed that the lifting restrictions played no role in Mr. Dillon's firing. Mountain Coal has disputed whether it categorically applies its "no-restrictions policy," but has not given any alternative reason for firing Mr. Dillon. Thus, Mountain Coal cannot be said to have created a pretextual reason for firing him.

We conclude, therefore, that Mr. Dillon did not produce evidence to establish that Mountain Coal regarded him as substantially limited in his ability to

---

[6]Of course, as we explained, Mr. Dillon also failed to establish that "mining jobs" constitute a class of jobs.

perform either a class of jobs or a broad range of jobs in various classes, in the geographic area surrounding West Elk Mine. The evidence was not sufficient to support the jury's verdict.

C.    The Rule 50 Motion

Mountain Coal's motion for judgment as a matter of law satisfied the requirements set forth under Federal Rule of Civil Procedure 50. A motion for judgment as a matter of law "must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). We consider the sufficiency of Mountain Coal's pre-verdict Rule 50 motion in isolation from arguments it raised for the first time in its renewed post-verdict Rule 50 motion. *See Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 738–39 (10th Cir. 2007) (stating that a renewed post-verdict motion for judgment as a matter of law cannot assert grounds for relief that are not asserted in the original pre-verdict motion). Thus, the issue is whether Mountain Coal's Rule 50 motion at the close of the plaintiffs' case was sufficient.

In evaluating the sufficiency of a Rule 50 motion, we liberally construe Rule 50's requirements. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1228 (10th Cir. 2000). "Technical precision is unnecessary." *Id.* We apply Rule 50 rigidly only when necessary to protect a party's right to a jury trial or to ensure that a party has notice of an evidentiary deficiency. *Id.* at 1228–29. The motion must be specific enough "to apprise the court and opposing counsel of

the movant's position with respect to the motion." *Id.* at 1229 (quoting 9A Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 2533 (1995)).

Mr. Dillon asserts that, because Mountain Coal's Rule 50 motion did not specifically discuss Mr. Dillon's lack of evidence regarding the job market surrounding West Elk Mine, the motion did not "specify . . . the law and facts that entitle the movant to the judgment." *See* Fed. R. Civ. P. 50(a)(2). In its motion, Mountain Coal argued that it was the plaintiffs' burden to demonstrate that Mountain Coal regarded them as substantially limited in the major life activity of working, in either a class of jobs or in a broad range of jobs. Additionally, Mountain Coal contended that "[t]he focus [of the plaintiffs' evidence] was on the restrictions and on the jobs at Mountain Coal, and there is no evidence that Mountain Coal believed that they couldn't do jobs in other industries at other mines anywhere outside of the property at West Elk."

Mountain Coal also referenced Jury Instruction No. 12, which identified the requirements for determining that an employee was regarded by his employer as being substantially limited in the ability to perform either a "class of jobs" or a "broad range of jobs."[7] After referencing this instruction, the attorney defined

---

[7]We recognize that Mountain Coal was addressing Mr. Clawson's case when explaining the legal requirements for a "regarded as" claim under the ADA. However, because Mr. Dillon argued similar claims, and both plaintiffs bore the burden of demonstrating that Mountain Coal regarded them as disabled, any

(continued...)

-14-

both a "class of jobs" and a "broad range of jobs," based on the EEOC's guidelines. Both definitions made reference to the jobs available in the geographic area.

We disagree with Mr. Dillon's contention that the motion gave him inadequate notice about the deficiency in his evidence. Mountain Coal established that the plaintiffs were required to put on evidence that Mountain Coal regarded the plaintiffs as substantially limited in performing either a "class of jobs" or a "broad range of jobs in various classes." Mountain Coal defined those terms, making it clear that the plaintiffs would need to provide evidence about other jobs in the area to prevail on their claims. In addition, the district court stated that it was "seriously concerned that the record . . . is inadequate to establish the requirements for a regarded as claim under the ADA." We therefore conclude that Mountain Coal's Rule 50 motion gave the plaintiffs adequate notice regarding the evidence that they needed to produce, and informed both the plaintiffs and the court about "the movant's position with respect to the motion." *United Int'l*, 210 F.3d at 1228–29. Accordingly, the motion met Rule 50's requirement that it "specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2).

---

[7](...continued)
statement as to the requirements for a successful ADA claim put both plaintiffs on notice as to the evidentiary requirements. Mountain Coal also made it clear that it believed Mr. Dillon had not produced the evidence necessary to support a "regarded as" ADA claim.

D.      Excluded Testimony

Finally, we reject Mr. Dillon's argument that, if we conclude his evidence was insufficient, we should remand for a new trial based on the court's erroneous exclusion of certain testimony. We review evidentiary rulings for an abuse of discretion. *United States v. Rogers*, 556 F.3d 1130, 1136 (10th Cir. 2009). The district court did not allow Mr. Clawson to respond when asked how miners were classified at a mine near West Elk. The court also did not allow John Ballard, a former Mountain Coal employee, to testify as to his position at a second nearby mine. Mr. Dillon asserts that this testimony could have given the jury information about jobs in that area that required similar skill or training as the jobs at West Elk Mine. In neither case, however, did Mr. Dillon's attorney assert that argument when confronted with the objection. Therefore, the issue was not preserved for appeal. *See United States v. Martinez*, 776 F.2d 1481, 1485 (10th Cir. 1985) (holding that an issue is not properly preserved for appeal when an attorney asserted different grounds for allowing evidence at trial and on appeal, and when no offer of proof was made). The district court also did not abuse its discretion when it limited the testimony of the two co-plaintiffs who were dismissed on summary judgment. There is no indication that they could have provided the evidence that Mr. Dillon lacked regarding the job market in the area surrounding West Elk Mine.

### III. CONCLUSION

-16-

We agree with the district court's determination that Mr. Dillon produced insufficient evidence from which a reasonable jury could conclude that Mountain Coal regarded Mr. Dillon as disabled. We also hold that Mountain Coal's motion for judgment as a matter of law complied with Rule 50, and that the district court did not abuse its discretion in limiting the testimony of certain witnesses. Accordingly, we AFFIRM the district court's grant of judgment as a matter of law to Mountain Coal.